UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CENTURY INDEMNITY COMPANY**, as successor to CCI Insurance Company, as successor to Insurance Company of North America<br><br>Plaintiff,<br><br>v.<br><br>**RLI INSURANCE COMPANY**,<br><br>Defendant. | COMPLAINT<br><br>Case No. _____ |

## COMPLAINT – CIVIL ACTION

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), by and through its attorneys, White and Williams LLP, brings this civil action against RLI Insurance Company ("RLI") and in support thereof avers as follows:

## INTRODUCTION

1. This is a breach of contract and declaratory judgement action under two reinsurance contracts issued by RLI to Century.

2. Century has submitted proofs of loss to RLI in accordance with the reinsurance contracts, which require RLI to follow Century's settlements and to pay Century's proofs of loss "promptly."

3. RLI has breached the reinsurance contracts by refusing to pay Century's proofs of loss.

## THE PARTIES

4. Century is a Pennsylvania corporation organized and existing under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business at 436 Walnut Street, in Philadelphia, Pennsylvania.

5. RLI is an Illinois corporation and maintains a principal place of business in Peoria, Illinois.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000 exclusive of interest and costs and because there is complete diversity in that Century is a Pennsylvania corporation with its principal place of business in Pennsylvania, and RLI is an Illinois corporation with its principal place of business in Illinois.

7. This Court has personal jurisdiction over RLI because the transactions giving rise to the claims occurred in substantial part in the Commonwealth of Pennsylvania. Specifically, RLI issued the reinsurance contracts at issue to Century's predecessor, Insurance Company of North America, a Pennsylvania corporation; the reinsurance billings at issue were sent to RLI from Century's office in Philadelphia; and RLI has regularly communicated with Century's representatives in Philadelphia concerning those reinsurance billings. In addition, upon information and belief, RLI has regular and repeated contacts with the Commonwealth of Pennsylvania and regularly conducts business in this district.

8. Venue is proper under 28 U.S.C. §1391(b)(2) because the transactions giving rise to the claims occurred in substantial part within this district, and because both parties conduct business in this district.

## UNDERLYING INSURANCE POLICIES

9. Century issued excess blanket catastrophe liability policy number XBC 153673 to Gould, Inc. ("Gould") effective March 1, 1983 to March 1, 1984 (the "1983 Policy"). The 1983 Policy provides limits of $25,000,000 excess of underlying coverage provided by another insurance company.

10. Century issued excess blanket catastrophe liability policy number XBC 540717 to Gould effective March 1, 1984 to March 1, 1985 (the "1984 Policy"). The 1984 Policy provides limits of $25,000,000 excess of underlying coverage provided by another insurance company.

## THE REINSURANCE CONTRACTS

11. RLI issued Certificate of Facultative Reinsurance No. C0035 effective for the same period as the 1983 Policy (the "1983 RLI Certificate"). Pursuant to the 1983 RLI Certificate, RLI agreed to reinsure Century for $1,000,000 part of $4,000,000 excess of $1,000,000. Thus, once Century has paid $1,000,000 in loss under the 1983 Policy, RLI is liable for 25% of the next $4,000,000 in loss paid under the 1983 Policy. A copy of the 1983 RLI Certificate is attached as Exhibit 1.

12. The 1983 RLI Certificate contains a "follow the settlements" provision, which states that "[a]ll claims involving this reinsurance, when settled by [Century] shall be binding on the Reinsurer, who shall be bound to pay its proportion of such settlements…" See Ex. 1, ¶ 3.

13. The 1983 RLI Certificate provides that "[p]ayment…will be made by [RLI] to [Century] promptly following receipt of proof of loss." See Ex. 1, ¶ 4.

14. RLI issued Certificate of Facultative Reinsurance No. PMC 000416 effective for the same period as the 1984 Policy (the "1984 RLI Certificate"). Pursuant to the 1984 RLI Certificate, RLI agreed to reinsure Century for $1,000,000 part of $4,000,000 excess of

$1,000,000 – the same coverage as provided under the 1983 RLI Certificate.  Thus, again, once Century has paid $1,000,000 in loss under the 1984 Policy, RLI is liable for 25% of the next $4,000,000 in loss paid under the 1984 Policy.  A copy of the Declarations Page of the 1984 RLI Certificate is attached as Exhibit 2.

15.     Century has not located the second page (or reverse side) of the 1984 RLI Certificate, which contains substantive terms and conditions.  Upon information and belief, the 1984 RLI Certificate contains the same substantive terms and conditions contained on the second page (or reverse side) of the 1983 RLI Certificate, including but not limited to the terms and conditions referenced above in Paragraphs 12-13.

## UNDERLYING ASBESTOS CLAIMS AGAINST GOULD

16.     Gould faces asbestos lawsuits arising out of its alleged manufacture of circuit boards and other products containing asbestos. Gould tendered asbestos claims to its primary insurance carriers: Century (1958-1971); Hartford (1971-1977), and Continental Casualty Company (1977-1986). Until August 1, 2014, those carriers defended Gould pursuant to an informal cost share agreement.

17.     On August 1, 2014, Continental claimed that it had exhausted its insurance coverage, including the primary policies that sat directly underneath the 1983 Policy and 1984 Policy issued by Century.

18.     Upon the alleged exhaustion of the underlying Continental policies, Century began contributing to the defense and indemnification of Gould under the 1983 Policy and 1984 Policy.

19.     Century has paid millions of dollars in the defense and indemnification of Gould for the asbestos claims, including substantial payments under the 1983 Policy and 1984 Policy

reinsured by RLI.

## RLI REFUSES TO PAY CENTURY'S PROOFS OF LOSS

20. On September 17, 2018, Century submitted two proofs of loss to RLI with respect to payments made concerning the Gould asbestos claims. Specifically, Century submitted proofs of loss totaling $298,340.14 under the 1983 RLI Certificate and $435,608.79 under the 1984 RLI Certificate.

21. On December 7, 2018, Century submitted a revised proof of loss under the 1984 RLI Certificate. The revised proof of loss totaled $353,143.45 (instead of $435,608.79).

22. On September 30, 2019, Century submitted two proofs of loss to RLI reflecting Century's additional payments as well as a reallocation of prior indemnity and defense cost payments. The September 30, 2019 proofs of loss recognized prior products liability payments by RLI of $609,161.76 under the 1983 RLI Certificate and $209,002.64 under the 1984 RLI Certificate. The additional amounts billed to RLI under the September 30, 2019 proofs of loss totaled $92,498.10 under the 1983 RLI Certificate and $159,548.91 under the 1984 RLI Certificate.

23. As of September 30, 2019, the amount due under the 1983 and 1984 RLI Certificates totaled $903,530.60.

24. Century's direct insurance payments under the 1983 Policy have already exceeded the reinsurance layer in which RLI participates under the 1983 RLI Certificate based on Century's view of amounts paid under the policy. Therefore, Century does not, at this time, expect to submit additional proofs of loss to RLI under the 1983 RLI Certificate.

25. Century's direct insurance payments under the 1984 Policy have not yet exceeded the reinsurance layer in which RLI participates under the 1984 RLI Certificate, based on

Century's view of amounts paid under the policy. Century expects to make additional payments under the 1984 Policy and therefore expects to submit additional proofs of loss to RLI under the 1984 RLI Certificate. Century expects that within the next twelve months its payments under the 1984 Policy will, based on Century's view of amounts paid under the policy, exceed the reinsurance layer in which RLI participates under the 1984 RLI Certificate.

## COUNT I: BREACH OF CONTRACT
### (The 1983 RLI Certificate)

26. Century incorporates the above paragraphs by reference as if set forth in their entirety.

27. Century has submitted proofs of loss to RLI in accordance with the 1983 RLI Certificate.

28. RLI has breached the 1983 RLI Certificate by refusing to promptly pay the proofs of loss.

29. Century has been damaged in the amount of $390,838.24.

WHEREFORE, Century respectfully requests that this Court enter judgment in its favor and against RLI in the amount of $390,838.24, along with costs, interest and attorney's fees and any other relief that the Court deems appropriate.

## COUNT II: BREACH OF CONTRACT
### (The 1984 RLI Certificate)

30. Century incorporates the above paragraphs by reference as if set forth in their entirety.

31. Century has submitted proofs of loss to RLI in accordance with the 1984 RLI Certificate.

32. RLI has breached the 1984 RLI Certificate by refusing to promptly pay the proofs

of loss.

33. Century has been damaged in the amount of $512,692.36.

WHEREFORE, Century respectfully requests that this Court enter judgment in its favor and against RLI in the amount of $512,692.36, along with costs, interest and attorney's fees and any other relief that the Court deems appropriate.

### COUNT III: DECLARATORY JUDGMENT
### (The 1984 RLI Certificate)

34. Century incorporates the above paragraphs by reference as if set forth in their entirety.

35. An action for declaratory relief is governed by 28 U.S.C. § 2201.

36. Century complied with all of its obligations under the 1984 RLI Certificate.

37. RLI failed to comply with all of its obligations under the 1984 RLI Certificate.

38. Century expects to submit future proofs of loss under the 1984 RLI Certificate.

39. There is a justiciable controversy regarding the parties' respective rights and obligations under the 1984 RLI Certificate, including but not limited to RLI's obligation to pay past and future proofs of loss submitted thereunder.

7

24548530v.1

WHEREFORE, Century respectfully requests a declaration from this Court that Century has performed its obligations under the 1984 RLI Certificate and that RLI is required to promptly pay Century's past and future proofs of loss submitted thereunder, along with costs, interest and attorney's fees and any other relief that the Court deems appropriate.

Dated:  May 1, 2020

Respectfully submitted,

Daryn E. Rush (PA ID No. 69045)
Ciaran B. Way (PA ID No. 308933)
WHITE AND WILLIAMS LLP
Identification No(s). 69045 and 308933
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
215.864.6360 and 215.864.6815
rushd@whiteandwilliams.com
wayc@whiteandwilliams.com

*Attorneys for Century Indemnity Company*

## DECLARATION

I, Brendan D. McQuiggan, declare under penalty of perjury that the foregoing is true and correct.

Executed on April 30, 2020.

*[signature]*

Brendan D. McQuiggan

Title:  Vice President, Ceded Reinsurance
Brandywine Group of Insurance and
Reinsurance Companies

# EXHIBIT 1

24548530v.1

# CERTIFICATE OF FACULTATIVE REINSURANCE

Renewal of
Certificate No. __NEW__

# C0035



A STOCK COMPANY
**RLI INSURANCE COMPANY**
PEORIA, ILLINOIS 61614

(HEREIN CALLED THE REINSURER)

Reinsured __INSURANCE COMPANY OF NORTH AMERICA SPECIAL RISKS__
Name of Ceding Company

(herein called the Company) in respect of the Company's policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein, as follows:

Name of Insured: __GOULD INC., ETAL__

Address of Insured: __10 GOULD CENTER, ROLLING MEADOW, IL  60008__

Ceding Company Policy No: __XBC 15 36 73__   From: __3/1/83__   To: __3/1/84__

Reinsurance Period: From __3/1/83__   To: __3/1/84__

Details of Reinsurance Afforded:

| SECTION I<br>TYPE OF INSURANCE | SECTION II<br>POLICY LIMITS AND APPLICATION | SECTION III<br>CEDING COMPANY RETENTION | SECTION IV<br>REINSURANCE ACCEPTED |
|---|---|---|---|
| UMBRELLA | $25,000,000 EACH OCCURRENCE AND ANNUAL AGGREGATE X/S UL | VARIOUS INCL $250,000 P/O $1,000,000 EA OCC/ ANN AGG | $1,000,000 P/O $4,000,000 EA OCC/ ANN AGG X/S $1,000,000 EA OCC/ ANN AGG X/S UL |

Premium Due or First Installment: $ __5437.50 NET__      Future Installments: __N/A__

Adjustable: ☐       Commission __NIL__ %, Minimum Premium $ __N/A__

BROKERAGE 10%

CANCELLATION CLAUSE: 60 DAYS PLUS 30 DAYS NOT TO EXCEED 90 DAYS IN ALL

Countersigned

__JUNE 6, 1983__
Date

7/29/83

PAUL J. McGEE ASSOCIATES, INC.
65 FRANKLIN STREET, BOSTON, MA 02110

By _____
Authorized Signature

BRC-104

1. The Company warrants to retain for its own account, subject to Treaty Reinsurance, the amount of liability specified in Section III, and the liability of the Reinsurer specified in Section IV shall follow that of the Company and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this cetificate, and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

2. Prompt notice shall be given to the Reinsurer by the Company of any occurrence or accident which appears likely to involve this reinsurance and while the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance with the full cooperation of the Company.

3. All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, who shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award.

4. Payment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following receipt of proof of loss.

5. The Reinsurer will be paid or credited by the Company with its proportion of salvages, i.e., reimbursement obtained or recovery made by the Company, less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

6. In the event of insolvency of the Company, the terms of this Certificate are amended to conform to the statute of any state of the United States having jurisdiction to the extent that such reinsurance as is afforded hereunder may be credited to the Company as an admitted asset or deduction from liability, it being understood that, subject to such amendment, the Reinsurer may avail itself of any other provision of any such statute applicable.

7. The Reinsurer assumes all the credit risks of Intermediaries related to payments to Intermediaries under this reinsurance.

8. Cancellation of the policy of the Company shall constitute automatic cancellation of the Certificate and it may also be cancelled on a pro-rata basis by either party mailing or delivering to the other written notice stating when, not less than thirty days thereafter, such cancellation shall be effective.

9. The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested but this policy shall not be valid unless countersigned by a duly authorized agent of the Company.**

*Kim J. Dozier*
**Secretary**

*Gerald Stephens*
**President**

# EXHIBIT 2

24548530v.1

Certificate No. **PMC** 000416
Renews/Replaces Certificate No. C0035



**A STOCK COMPANY**
**RLI INSURANCE COMPANY**
PEORIA, ILLINOIS 61614
(HEREIN CALLED THE REINSURER)

Reinsured: **INSURANCE COMPANY OF NORTH AMERICA**
Name of Ceding Company

(herein called the Company) in respect of the Company's policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein, as follows:

Name of Insured: **GOULD, INC, ETAL**

Address of Insured: **ROLLING MEADOW, IL**

Ceding Company Policy No: **XBC 540717**   From: **3-1-84**   To: **3-1-85**

Reinsurance Period: From **3-1-84**   To: **3-1-85**

Details of Reinsurance Afforded:

| SECTION I<br>TYPE OF INSURANCE | SECTION II<br>POLICY LIMITS AND APPLICATION | SECTION III<br>CEDING COMPANY RETENTION | SECTION IV<br>REINSURANCE ACCEPTED |
|---|---|---|---|
| UMBRELLA LIABILITY | $25,000,000 EACH OCCURRENCE AND ANNUAL AGGREGATE EXCESS OF UL | VARIOUS INCLUDING $250,000 P/O $1,000,000 EA OCC/ANN AGG X/S UL | $1,000,000 P/O $4,000,000 EA OCC/ANN AGG X/S UL |

Premium Due or First Installment: $ **7250**   Future Installments: **N/A**

Adjustable: ☐   Commission **NIL** %, Minimum Premium $ _____

**CANCELLATION CLAUSE: 60 DAYS PLUS ORIGINAL NOT TO EXCEED 90 DAYS**

Countersigned

**JUNE 8, 1984**
Date

PAUL J. McGEE ASSOCIATES, INC.
65 FRANKLIN STREET, BOSTON, MA 02110

By _John M Pasek_ (signature)
BROKER   Authorized Signature

PJM 200 (04-83)

ENDORSEMENT     NUMBER: 1

CEDING COMPANY: INSURANCE COMPANY OF NORTH AMERICA
NAME OF INSURED: GOULD INC, ETAL
EFFECTIVE DATE OF ENDORSEMENT: 3-1-84
CERTIFICATE NUMBER: PMC000416 RENEWS C0035

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING APPLIES TO THIS CERTIFICATE:

AIRCRAFT PRODUCTS AND GROUNDING LIABILITY EXCLUSION

IN CONSIDERATION OF THE REDUCED PREMIUM CHARGED, IT IS AGREED THAT THE INSURANCE AFFORDED BY THIS POLICY SHALL NOT APPLY WITH RESPECT TO LIABILITY ARISING OUT OF AIRCRAFT PRODUCTS OR RELIANCE UPON ANY REPRESENTATION OR WARRANTY MADE WITH RESPECT THERETO, OR TO ANY LIABILITY ARISING OUT OF THE GROUNDING OF ANY AIRCRAFT.

"AIRCRAFT PRODUCTS" MEANS AERCRAFT (INCLUDING MISSILES OR SPACE-CRAFT) OR ANY OTHER GOODS OR PRODUCTS MANUFACTURED, SOLD, HANDLED OR DISTRIBUTED OR SERVICES PROVIDED OR RECOMMENDED BY THE INSURED OR BY OTHERS TRADING UNDER HIS NAME FOR USE IN THE MANUFACTURE, REPAIR, OPERATION, MAINTENANCE OR USE OF ANY AIRCRAFT.

"GROUNDING" SHALL MEAN THE WITHDRAWAL OF ONE OR MORE AIRCRAFT FROM FLIGHT OPERATIONS OR THE IMPOSITION OF SPEED, PASSENGER OR LOAD RESTRICTIONS ON SUCH AIRCRAFT, BY REASON OF THE EXISTENCE OF OR ALLEGED OR SUSPECTED EXISTENCE OF ANY DEFECT, FAULT OR CONDI-TION IN SUCH AIRCRAFT OR ANY PART THEREOF SOLD, HANDLED OR DIS-TRIBUTED BY TNE INSURED OR MANUFACTURED, ASSEMBLED OR PROCESSED BY ANY OTHER PERSON OR ORGANIZATION ACCORDING TO SPECIFICATIONS PLANS SUGGESTIONS, ORDERS OR DRAWINGS OF THE INSURED OR WITH TOOLS, MACHINERY OR OTHER EQUIPMENT FURNISHED TO SUCH PERSONS OR ORGANIZATIONS BY THE INSURED, WHETHER SUCH AIRCRAFT SO WITHDRAWN ARE OWNED OR OPERATED BY THE SAME OR DIFFERENT PER-SONS OR ORGANIZATIONS.

_____                    JUNE 8, 1984
(AUTHORIZATION)

RLI INSURANCE COMPANY
THROUGH PAUL J MCGEE ASSOCIATES